UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v. Criminal No. 21-423

KATRAE SMITH,
Defendant.

# MEMORANDUM IN AID OF SENTENCING

## 1. PREFACE

The defense comes to the sentencing of Katrae Smith with the ultimate goal of demonstrating that the appropriate penalty in this case is a variance beneath the Guidelines. There are multiple factors that support a variance, including the Defendant's youthful age (19), acceptance of responsibility, difficult upbringing, the circumstances of the instant offense, his role in the instant offense, and his employment goals. For the reasons stated herein, the defense respectfully submits the appropriate penalty involves a variance beneath the guideline imprisonment range.

## 2. INTRODUCTION

Katrae Montel Smith, age 19, was born on June 24, 2002, in Pittsburgh, PA. Katrae's parents are Dorneathia Yarbrough and Nathaniel Smith. Mr. Smith was primarily raised by his mother in the East Hills of Pittsburgh, PA. Katrea Smith is ambitious, educated and goal driven. For the reasons stated herein, the Section 3353a analysis supports a brief period of incarceration beneath the applicable guideline range as sufficient to meet the goals of sentencing.

## 3. SENTENCING CONSIDERATIONS

Post ***Booker***, district courts are required to follow a three step sentencing process:

(1.) Courts must continue to calculate a defendant's Guideline sentence precisely as they would have before Booker.

> (2.) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force.
>
> (3.) Finally, they are required to exercise their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

***United States v. Gunter,*** 462 F.3d 237, 247 (3d Cir. 2006).

**Step 1: Calculate the Guideline Range.**

The defense has no objection to the guideline range calculation identified in the final Presentence Investigation Report. ***See Document # 60.*** Mr. Smith's criminal history score is five. The criminal history category is III. The base offense level is 12. There are two points added pursuant to Section 2K2.1(b)(1)(A) because the offense involved more than three firearms. There is a two-level reduction for acceptance of responsibility. The total offense level is 12. The guideline imprisonment range for an offense level of 12 and a criminal history of III is 15 to 21 months. ***Presentence Investigation Report, March 8, 2022, Document # 60, paragraph 58, at 15.***

**Step 2: Rule on Departure Motions.**

There have been no motions for departure filed by the defense.

**Step 3: Consideration of the Section 3553(a) factors.**

In addition to the applicable guideline range and Sentencing Commission policy statements, Section 3553(a) identifies seven factors that a sentencing court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentences and the sentencing range established by the guidelines;

(5) any pertinent policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

***See 18 U.S.C. § 3553(a).***

**Nature and Circumstances of the Offense**

The instant offense involves a conspiracy to purchase three firearms. On June 16, 2021, police detained Mr. Smith and found in the vicinity a loaded Glock 9mm caliber pistol with a serial number BTRN542. A trace of the firearm showed that the co-defendant, Deyanira Araujo, purchased the gun six days prior. A search of Mr. Smith's phone revealed text messages with Ms. Araujo regarding the purchase of three hand guns, the Glock 9mm serial number BTRN542, a Glock 9mm serial number BTED259, and a Star Bonifacio serial number 2083448. ATF records corroborated Mr. Smith's text messages and revealed that Ms. Araujo purchased the guns. Surveillance videos and ATF records established that Ms. Araujo purchased the firearms.

The nature and circumstances of the offense support a variance. The offense conduct relates only to the purchase of firearms. There is no allegation that Katrae Smith commit any acts of violence or that he was involved in drug trafficking. The record is clear that Katrae Smith could not commit this offense without the assistance of adults. In each instance, the co-defendant, executed ATF Firearm Transaction Records indicating that she was of lawful age to purchase firearms and that she was buying the guns for herself. Mr. Smith accepts responsibility for his criminal conduct. The nature and circumstances of the offense do not involve any aggravating factors that would warrant a sentence above the guidelines. His role in the offense and the offense conduct, support a variance.

**History and Characteristics of the Defendant**

At age 19, Katrae Smith is a young man. He comes from a supportive family. Both his father, Nathaniel Smith, and mother, Dorneathia Yarbrough, have communicated with the undersigned during this representation. Both parents have actively expressed interest and concern regarding the outcome of these proceedings. However, there have been times that Katrae has not had needed paternal guidance. His father, Nathaniel Smith, was sentenced on November 14, 2006, by the Honorable Anthony M. Mariani at CC# 200414607 to a 15-to-30 year sentence for a third degree murder. Nathaniel was released on May 26, 2020, and he remains on parole. Katrae Smith received no meaningful paternal guidance during his upbringing. Nathaniel Smith reports that his son had "no guidance from a man." Nathaniel acknowledges that his incarceration forced to Katrae to "grasp onto other men."

Katrae and Nathaniel have developed a meaningful bond. Since Nathaniel's release from prison, the Smith men have "always had fun." They enjoy playing basketball together. They go out for meals. Nathaniel has fond memories of taking Katrae to Red Robin, Friday's and Subway. The absence of a father figure is well-documented. Although Katrae Smith accepts responsibility for the instant offense and does not seek to place any blame, the record is clear that he would have benefitted from an active, involved father. Recent history shows that Nathaniel and Katrae are on the right track. A lengthy period of incarceration will only disrupt the bond and connection that the Smith men are developing. With the absence of a father in his life, prison sentences have done enough damage in Katrae Smith's development.

Katrae Smith is a young man who is passionate about athletics and physical fitness. His favorite sport is football. As a young boy, he would play football with his friends at the East Hills Baseball Field. Local coaches would recruit players from these pick-up games. He reports

that everyone tells him, he "is good at sports." In facts, Katrae's talent was noticed and in 2014, at age 11, he was playing in the City League for the Garfield Gators. In 2018, Katrae played defensive end and cornerback for Westinghouse High School. Katrae recalls that his coaches told him to focus on the game and he "could take it somewhere." Katrae Smith reports that his favorite NFL team is the New England Patriots. He idolizes NFL stars, Cam Newton, Aaron Donald, JJ and TJ Watt. His favorite player is New England Patriot free safety, Devin McCourty.

Although the Butler County Jail does not provide inmates with a gymnasium, Katrae Smith works out daily. His routine involves 5 sets of 20 burpees. 15 pull ups and push ups. He works out on a dip bar and does abdominal crunches. On leg days, he adds sets of squats and leg raises to the routine. Mr. Smith's dedication to physical fitness demonstrates his commitment and motivation.

A typical 19-year old, Katrae reports that he enjoys playing video games with his friends. His favorite games are sports themed. On Play Station 4, he plays Madden, Basketball and UFC.

The Presentence Investigation report documents that Katrae Smith has been diagnosed with attention deficit hyperactivity disorder and oppositional defiant disorder. According to the CDC, a child diagnosed with ADHD might make careless mistakes, take unnecessary risks, or have a hard time resisting temptation. ***See attached, What is ADHD? Signs and Symptoms***. According to the Mayo Clinic symptoms of ODD include arguing with adults or people of authority. ***See attached, Oppositional defiant disorder (ODD).*** ODD can result in antisocial behavior and impulse control problems. The ADHD and ODD diagnoses are circumstances beyond Mr. Smith's control that the Court should recognize have likely contributed to his criminal conduct.

**<u>Need for the Sentence Imposed</u>**

The Section 3553(a)(2) analysis supports a variance for Katrae Smith. Data related to youthful offenders (25 and younger) and aging suggests that an extended period of incarceration will not meet the goals of deterrence and protection. Sentencing Commission data shows that offenders outgrow their criminal conduct. In the 2017 report entitled, "The Effects of Aging on Recidivism Among Federal Offenders" the Commission examined a group of 25,431 federal offenders who were released from prison or placed on probation in calendar year 2005. One of the study's key findings was that "Older offenders were substantially less likely than younger offenders to recidivate following release." The data examined in the study showed that 13.4 percent of offenders age 65 or older at the time of release were rearrested. 67.6 percent of offenders younger than 21 years of age were rearrested. ***The Effects of Aging on Recidivism Among Federal Offenders, at 3.***

The recidivism data is significant in the case of Katrae Smith. Appearing for a federal sentencing at age 19, he still has a long life in front of him. A lengthy period of incarceration imposed at a critical time in his development will do little to deter future crime and protect the public. The statistics show that most offenders his age are rearrested upon release. An emphasis on supervision as opposed to locking him up in the BOP will better serve the Section 3553(a)(2) goals.

Katrae Smith is developing into a mature, young man. He understands that he needs to avoid the criminal lifestyle of the streets and "stay out of the way." He acknowledges that his "next mistake will be years" and he "doesn't want to spend years in jail." Although Mr. Smith will benefit from educational, rehabilitation and vocational programming, there is no indication that a lengthy period of incarceration is needed. Mr. Smith has a high school diploma. He

reports that he always liked school. When asked about his favorite subject, he identified mathematics and explained, "It was hard at first but I became an expert." Katrae has attainable employment goals. Long term, he indicates that he would like to obtain culinary training. Short term, he has expressed interest in warehouse work for UPS. The PSR documents Mr. Smith's marijuana use. Overall, there is a need for education, vocational training and rehabilitation. However, there is no indication that an extended prison sentence is necessary to meet these objectives.

**Kinds of Sentences and the Sentencing Range Established by the Guidelines**

Katrae Smith's criminal history category is III. The PSR identifies a total offense level of 12. ***See Pre Sentence Investigation Report, Document # 60, paragraph 59, at 15.*** The applicable guideline imprisonment range is 15 to 21 months.

**Pertinent Policy Statements**

### §5H1.1. Age (Policy Statement)

| | |
|---|---|
| *Historical Note* | Effective November 1, 1987. Amended effective November 1, 1991 (amendment 386); November 1, 1993 (amendment 475); October 27, 2003 (amendment 651); November 1, 2004 (amendment 674); November 1, 2010 (amendment 739). |

> Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration. Physical condition, which may be related to age, is addressed at §5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).

In the May 2017 report entitled, "Youthful Offenders," the Sentencing Commission explained the evolution of Section 5H1.1. "Until 2010, the guidelines had provided that age – including youth – was "not ordinarily relevant" in determining whether a departure from the guidelines was relevant. The Commission adopted this less restrictive departure standard "after

reviewing recent federal sentencing data, trial and appellate court case law, scholarly literature, public comment and testimony, and feedback in various forms from federal judges." ***See United States Sentencing Commission report, Youthful Offenders, May 2017, at 11.*** The inclusion of Section 5H1.1 in the Guidelines supports the present request for a variance. Katrae Smith is presently only 19-years old. Katrae was only 18 years old at the time of the offense and at the time of his arrest. The Commission directs that consideration of age is an appropriate consideration for this Honorable Court.

In the report, the Commission noted the contributions that neuroscience has made to the examination of sentencing youthful offenders. Understanding brain development is critical to evaluating the sentencing of defendants 25 and younger. Research studying the prefrontal cortex of the brain shows that this is the last part of the brain to fully develop. The prefrontal cortex is used in impulse control, emotional reactions, executive function and decision making. Biology and sociocultural experiences impact the development of the prefrontal cortex. ***Id. at 6.*** Studies have also determined that marijuana and alcohol use further delay brain development. ***Id. at 7.*** The Commission identified 25 as the average age for full brain development. ***Id.*** In summary, the Sentencing Commission recognizes that at age 19, Katrae Smith's brain has not fully developed. When he committed the instant offense he was even younger. A variance is warranted because this youthful offender does not have the same mental capabilities as an adult facing the same penalty under the Guidelines.

The impact that neuroscience has had on the sentencing of youthful offenders is clear in several landmark Supreme Court cases. In ***Graham v. Florida, 568 U.S. 48 (2010),*** Justice Kennedy wrote, "As compared to adults, juveniles have a lack of maturity and underdeveloped sense of responsibility; they are more vulnerable or susceptible to negative influences and

outside pressures, including peer pressure; and their characters are not as well formed…A juvenile is not absolved of responsibility for his actions, but his transgression is not as morally reprehensible as that of an adult." ***Graham, 568 U.S. at 68 (citations omitted).*** The ***Graham*** Court further noted, "Developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of irretrievably depraved character than are the actions of adults. It remains true that from a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." ***Id.***

In ***Roper v. Simmons, 543 U.S. 551 (2005),*** Justice Kennedy noted three general differences between juveniles and adults. First, "a lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions." Second, "juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure. Youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological change. This is explained in part by the prevailing circumstance that juveniles have less control, or less experience with control, over their own environment. As legal minors, juveniles lack the freedom that adults have to extricate themselves from a criminogenic setting." Third, the character of a juvenile is not as well formed as that of an adult. The personality traits are more transitory, less fixed." ***Roper, 569-570 (citations omitted).*** The Court noted, "Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles

have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment."

In ***Thompson v. Oklahoma, 487 U.S. 815 (1988),*** Justice Stevens wrote that the Court "endorsed the proposition that less culpability should attach to a crime committed by a juvenile than to a comparable crime committed by an adult. The basis for this conclusion is too obvious to require extended explanation. Inexperience, less education, and less intelligence make the teenager less able to evaluate the consequences of his or her conduct while at the same time he or she is much more apt to be motivated by mere emotion or peer pressure than is an adult. The reasons why juveniles are not trusted with the privileges and responsibilities of an adult also explain why their irresponsible conduct is not as morally reprehensible as that of an adult." ***Thompson, at 835.*** The Court also cited the following passage from the 1978 Report of the twentieth Century Fund Task Force on Sentencing Policy Toward Young Offenders: "Adolescents, particularly in the early and middle teen years, are more vulnerable, more impulsive, and less self-disciplined than adults. Crimes committed by youths may be just as harmful to victims as those committed by older persons, but they deserve less punishment because adolescents may have less capacity to control their conduct and to think in long-range terms than adults. Moreover, youth crime as such is not exclusively the offender's fault; offenses by the young also represent a failure of family, school, and the social system, which share responsibility for the development of America's youth." ***Thompson, at 84.***

In ***Miller v. Alabama, 567 U.S. 460 (2012),*** the Supreme Court held that mandatory life imprisonment without parole for those under the age of 18 at the time of their crimes was cruel and unusual punishment. Justice Kagan noted that case precedent insisted that "a sentencer have the ability to consider the 'mitigating qualities of youth.'" ***Miller, at 476.*** The Court wrote the

following, "To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features – among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home and home environment that surrounds him – and from which he cannot extricate himself – no matter how brutal or dysfunctional. It neglects the circumstances of the criminal homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser included offense if not for incompetencies associated with youth—for example his inability to deal with police officers or prosecutors or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it." ***Id. at 477-478.***

The cases cited above demonstrate the impact that neuroscience has had on the Supreme Court and federal sentencing law. The science regarding brain development has been repeatedly accepted and endorsed. The Courts have repeatedly determined that juveniles do not deserve the same penalties as adults. These cases are instructive. Age is a mitigating factor that Your Honor should take into consideration when sentencing Katrae Smith. Peer pressure, family background, and brain development are some of the factors that support a variance for Katrae Smith. For these reasons, sentencing Katrae Smith to the same guideline range recommended for an adult offender is inappropriate. A variance is warranted.

**<u>The Need to Avoid Unwarranted Sentencing Disparities</u>**

Data compiled by the United States Sentencing Commission shows that a sentence beneath the guidelines is warranted and will not disrupt any valid sentencing scheme. Sentencing data for fiscal year 2021 as reported by the Commission shows that 7,732 offenders

were sentenced for crimes governed by Guideline Section 2K2.1. The Commission determined that 3,115 of those offenders received a variance. Over 40% of defendants sentenced under Section 2K2.1 were sentenced beneath the Guidelines. ***See attached.*** Statistics support a sentence beneath the Guidelines for Katrae Smith. Mitigating factors including age, the nature and circumstances of the offense, difficult upbringing and lack of paternal guidance, point to a sentence beneath the applicable guideline range. Where a meaningful number of defendants have been awarded variances from the Section 2K2.1 penalty and there are no aggravating circumstances, sentencing Katrae Smith beneath the Guidelines will not result in an unwarranted sentencing disparity.

**4. CONCLUSION**

For the reasons stated herein, the Defense respectfully submits that a significant variance beneath the applicable guideline range is the appropriate penalty for Katrae Smith. Consideration of the Section 3553(a) factors show that a variance is warranted. Katrae is presently 19 years old and was only 18 at the time of the offense. His role in the offense and the non-violent nature of the offense conduct are noteworthy. He has experienced a difficult upbringing and has lived most of his life without paternal guidance while his father served a prison sentence.

Probation with conditions is a serious penalty. In ***United States v. Gall***, the United States Supreme Court said that a probationary sentence "rather than an act of leniency, is a substantial restriction of freedom." ***Gall, 552 U.S. at 44.*** A sentence to a minimal period of incarceration, that emphasizes supervised release, is sufficient. For the reasons stated herein, the defense respectfully requests that Your Honor grant a variance and sentence Katrae Smith beneath the applicable Guideline range.

Respectfully submitted,

Robert Carey

Robert S. Carey, Jr.
Attorney for Katrae Smith